UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CURTIS SMITH, Jr.,                )        CASE NO.: 1:09CV132
                                  )
            Petitioner,           )        JUDGE JOHN R. ADAMS
                                  )
      v.                          )        Magistrate Judge George J. Limbert
                                  )
KEITH SMITH, Warden,              )        **REPORT AND RECOMMENDATION**
                                  )        **OF MAGISTRATE JUDGE**
            Respondent.           )        **AND ORDER [RE: Dkt. #15]**

Pursuant to 28 U.S.C. § 2254, Petitioner Curtis Smith, Jr. ("Petitioner"), a prisoner in custody at the Mansfield Correctional Institution, is challenging his Cuyahoga County, Ohio Court of Common Pleas convictions for aggravated murder with a firearm specification and possession of a weapon while under a disability.  ECF Dkt. #1.  The case was referred to the undersigned for a report and recommendation.  For the following reasons, the undersigned recommends that the Court DISMISS the instant petition with prejudice:

## I.    SYNOPSIS OF THE FACTS

The Ohio Eighth District Court of Appeals set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).  As set forth by the Eighth District Court of Appeals, the facts are:

> {¶ 5} The charges in this case stemmed from the January 15, 2005 fatal shooting of sixteen-year-old Lennard Pinson at the Lonnie Burten Recreation Center in Cleveland. The single fatal gunshot wound to the head was inflicted by a .9 mm bullet and was fired from a distance of more than four feet away. The events leading up to the shooting were recounted at trial by several of the youths who were at the center.

{¶ 6} On that evening, the youths were gathered at the center for a birthday party for Pinson's girlfriend. Many of the youths were from either the King Kennedy neighborhood or the Garden Valley neighborhood. The two neighborhoods had been in conflict with each other and, in fact, in the two days prior to the shooting, there had been fighting among residents from each of the neighborhoods. During one of the incidents the night before the shooting, appellant, who was from the King Kennedy neighborhood, had an ironing board leg which he threw at a group of youths from the Garden Valley neighborhood. Pinson, who was from the Garden Valley neighborhood, was not present during that altercation, but several of his friends from his neighborhood, who were with him the evening he was shot, were there.

{¶ 7} The testimony established that shortly after Pinson and other youths from Garden Valley arrived at the center for the party, an altercation ensued inside the center between the warring groups. As a result, an adult chaperone at the party ordered many of the Garden Valley youths, including Pinson and his friends, to leave the center. The Garden Valley youths then congregated outside of the center. One of the youths from the Garden Valley group, Christopher Thornton, had a .25 caliber gun.

{¶ 8} In the meantime, appellant and Fred Wells, also from the King Kennedy neighborhood, were requested to come to the center. The testimony was conflicting as to whether they were called to the center to fight or to pick up family members. In any event, they arrived at the center as the Garden Valley group was congregating outside. The testimony is again not clear as to whether both appellant and Wells went into the center; some of the witnesses testified that both appellant and Wells went into the center, while Wells and his girlfriend, Serema Wanzo (appellant's former girlfriend), testified that only Wells went into the center and appellant stayed outside. Wells testified he remained in the center and, thus, did not observe the shooting, which occurred outside.

{¶ 9} Regardless, the testimony revealed that shortly after appellant and Wells arrived at the center, several of the King Kennedy youths came out of the center to where the Garden Valley youths were congregated. The witnesses who testified that they saw appellant go into the center, described that as the King Kennedy youths came running out of the center, appellant came running out last with a gun in his hand and told the King Kennedy group to "get them." At some point, shots were fired somewhere in the general vicinity by an unknown person.FN1 At that point, the tension between the Garden Valley group and the King Kennedy group escalated. The testimony did not reveal that any of the youths were injured as a result of that first round of shots.

> FN1. Because of the conflicts in the testimony previously mentioned, there are varying accounts of exactly when these shots were fired. There was testimony indicating that they were fired just moments after appellant and Wells arrived at the center, and there was testimony that the shots were fired when appellant exited the center with the King Kennedy youths. Moreover, there was conflicting testimony as to the number of shots fired (ranging from between three to nine shots) and where the shots came from (ranging from as close as the playground adjacent to the center to several blocks away).

{¶ 10} The next shot came from Thornton, Pinson's friend from the Garden Valley group, who, according to the witnesses, save for one, fired the .25 caliber gun in the air one time. Thornton testified that he fired the gun one time in the air in an attempt to clear everybody from the scene.

{¶ 11} Wells' girlfriend, Serema Wanzo, was the one witness whose testimony conflicted with the other witnesses on this point, however. According to her, Thornton

fired four shots as he had the gun pointing out in front of him and was running backward. As Thornton was running backward, Pinson was about five feet in front of him and off to the side. According to Wanzo, Pinson was on the ground after Thornton had finished shooting. Wanzo described, that in reaction to Thornton's shots, appellant said he was going to "clear the place" and shot four shots in the area where the Garden Valley youths were. Wanzo was unable to identify the type of gun appellant had used. Wanzo testified that appellant ran away after he shot the four shots at the Garden Valley youths.

{¶ 12} Wanzo also claimed that the statement she gave to the police five days after the shooting was not true and that the detective had put words in her mouth. In her statement, Wanzo described the gun appellant used as a .9 mm gun. Wanzo also told the police that Thornton's gun was pointed toward the ground. Moreover, Wanzo told the police that Pinson was on the ground after appellant had finished shooting.

{¶ 13} Wanzo was also questioned, over the defense's objection, about an unsigned statement and affidavits she had provided to defense counsel subsequent to her statement to the police, wherein she stated that her statement to the police was untrue. In addition to the reasons just mentioned regarding Wanzo's claim of the untruthfulness of her statement to the police, Wanzo claimed in her statement to the defense that approximately two days after the shooting, Jimmy Washington, a boy who used to live in the King Kennedy neighborhood, told her that he shot Pinson. Wanzo testified that her statement to the defense was true, but that due to scheduling conflicts she never met with defense counsel to sign it. Wanzo did not provide a revised statement to the police with the changes in her version of the events.

{¶ 14} Upon his arrest, and after being *Mirandized*, appellant initially told the police that he was at the center when the shooting occurred, but that he had no involvement with the shooting. He stated that his only purpose in going to the center that evening was to pick up his brother and sister. He stated that when he arrived, he observed several of the male youths outside with guns. Appellant stated that he went into the center to get his brother and sister, and as he attempted to exit the center with them the youths began firing at him. Consequently, he sent his brother and sister back into the center and he ran around the center and found a friend who gave him a ride to his girlfriend's house.

{¶ 15} During that interview, appellant eventually said that he had gotten a ride to the center with Fred Wells, and that before going, he obtained a .9 mm gun from an unknown male. Appellant told the police that as he arrived at the center, a group of the King Kennedy youths came out of the front door of the center in front him and he followed them. Gunfire erupted, so he ran back to the King Kennedy neighborhood, found the male from whom he had borrowed the gun, and returned it to him. Appellant initially denied ever brandishing or firing the gun.

{¶ 16} Later in the interview, however, appellant told the police that he ran out the center in front of the King Kennedy youths, firing his gun three times into the air. As the statement was being put in written form, appellant stated that he wanted a lawyer and the interview ended.

{¶ 17} Curtis Smith, Sr., appellant's father, testified that appellant told him that he had a .9 mm gun that evening, but that he fired the gun in the air and did not hit Pinson. Smith explained that appellant told him that he shot the gun in self-defense while running from the center.

-3-

{¶ 18} Wells, appellant's friend who accompanied him to the center that evening, testified that he called appellant approximately one hour after the shooting occurred because he was concerned about the youths saying that appellant was the shooter. Wells testified that upon informing appellant that he had heard he was the shooter, appellant became quiet and did not say anything in response.

{¶ 19} The physical evidence in this case consisted of the .9 mm bullet removed from Pinson's head and a .25 caliber gun purportedly used by Thornton on the evening in question.FN2 Thornton's gun was excluded by the police as having fired the fatal shot.

> FN2. Approximately two weeks after the shooting, Thornton turned a .25 caliber gun over to the police.

ECF Dkt. #5, Ex. 7; *State v. Smith*, Case. No. 86690, 2006 WL 1704530 at ¶¶5-19 (Ohio App. 8 Dist. June 22, 2006), unreported.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

On February 1, 2005, the prosecuting attorney for Cuyahoga County, Ohio filed an indictment alleging one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") 2903.01, with a firearm specification pursuant to O.R.C. § 2941.145, and one count of having a weapon while under a disability in violation of O.R.C. § 2923.13.  ECF Dkt. #5, Ex. 1.

The case against Petitioner proceeded to a jury trial.  *See* ECF Dkt. #5, Ex. 2.  The jury found Petitioner guilty of both counts.  *Id.*  On July 6, 2005, the trial court sentenced Petitioner to 15 years of imprisonment for aggravated murder with a consecutive 3 year term of imprisonment for the firearm specification and a 1 year concurrent term of imprisonment for having a weapon under a disability.  ECF Dkt. #5, Ex. 3.

### B.     Direct Appeal

On July 11, 2005, Petitioner filed a notice of appeal.  ECF Dkt. #5, Ex. 4.  Petitioner filed an appellate brief in the Ohio Court of Appeals for the Eighth District setting forth the following assignments of error:

1.   The prosecution violated appellant's constitutional rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper questioning and closing argument that commented upon the Defendant's assertion of his right to remain silent.

-4-

2.    The prosecution violated appellant's rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper closing argument designed to appeal to the passions of the jury and which also included improper attacks on defense counsel.

3.    Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

4.    The trial court committed reversible error by giving a complicity instruction where complicity was not charged in the indictment and where there was no factual basis for such an instruction.

5.    The conviction for Murder was against the manifest weight of the evidence.

ECF Dkt. #5, Ex. 5.

On July 3, 2006, the Ohio Court of Appeals affirmed Petitioner's conviction. ECF Dkt. #5, Ex. 7. On August 17, 2006, Petitioner filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #5, Ex. 8. In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

I.    A prosecutor violated a defendant's rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when he appeals to the passions of a jury in a murder case by telling it that a vote for acquittal will send a message to the community that disputes should be settled on the streets with guns.

II.   A trial court violated a defendant's right to notice of the charges against him and his right to an indictment by a grand jury where the trial court instructs the jury on complicity where complicity was not charged in the indictment.

*Id*. On November 1, 2006, the Supreme Court of Ohio dismissed Petitioner's appeal as not involving a substantial constitutional question. ECF Dkt. #5, Ex. 9.

**C.    Motion for New Trial**

On March 28, 2006, while his direct appeal was pending, Petitioner filed a motion with the trial court for leave to file a motion for a new trial based upon newly discovered evidence. ECF Dkt. #5, Ex. 10. On January 22, 2007, Petitioner filed a supplemental motion for leave to file a motion for a new trial. ECF Dkt. #5, Ex. 13. On February 9, 2007, the trial court denied Petitioner's motions. ECF Dkt. #5, Ex. 14. On March 3, 2007, Petitioner filed a notice of appeal from the trial court's judgment entry denying his motions. ECF Dkt. #5, Ex. 15. On July 13, 2007, Petitioner

filed a motion to correct an error in his notice of appeal.  ECF Dkt. #5, Ex. 16.[1]  Petitioner filed an

appellate brief raising the following assignment of error:

> 1.    The trial court abused its discretion in denying appellant's motion for leave to
>       file a motion for new trial.

ECF Dkt. #5, Ex. 17.  On March 3, 2008, the Court of Appeals of Ohio affirmed the trial court's

judgment denying Petitioner's motion for leave to file a motion for a new trial.  ECF Dkt. #5, Ex.

20.  On April 16, 2008, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt.

#5, Ex. 21.   Petitioner filed a memorandum in support of jurisdiction raising the following

proposition of law:

> 1.    The denial of a motion for leave to file a motion for new trial where there is
>       sufficient evidence of actual innocence that was not presented at trial, due to
>       its unavailability, is an abuse of discretion and a violation of both the Sixth and
>       Fourteenth Amendments to the United States Constitution.

ECF Dkt. #5, Ex. 22.  On July 9, 2008, the Supreme Court of Ohio declined jurisdiction.  ECF Dkt.

#5, Ex. 23.

### D.    Federal Habeas Corpus Petition

On December 18, 2008, Petitioner filed the instant petition.  ECF Dkt. #1; *see Towns v. U.S.*,

190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se*

prisoner's petition is considered to be filed on the day he delivers it to prison authorities).  Petitioner

raised the following grounds for relief:

> GROUND ONE:       Prosecutorial misconduct where the prosecutor engaged in
>                   improper questioning and closing arguments that commented
>                   upon Smith's assertion of his right to remain silent.
>
> GROUND TWO:       The Prosecutor engaged in improper closing arguments
>                   designed to appeal to the passions of the jury and which also
>                   included improper attacks of defense counsel.
>
> GROUND THREE:     Refusing to allow evidence of actual innocence to be presented
>                   to the jury in a new trial.

ECF Dkt. #1.  On June 5, 2009, Respondent filed a Return of Writ.  ECF Dkt. #5.  Petitioner did not

---

[1]    The original notice of appeal stated that Petitioner was challenging the judgment of conviction, but
he actually sought to challenge the judgment of denial of his motion for leave to file a motion for a
new trial.

file a traverse.

### III.   PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

#### A.   Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  Respondent contends that the instant petition is time-barred and should be dismissed.  ECF Dkt. #5 at 8-16.

In general, a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides:

> (d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); see 28 U.S.C. § 2244(d)(2).  To determine if a state proceeding will toll the statute of limitations, the Sixth Circuit has held that:

> A state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations.

*Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir. 1999).  Further, the "tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The one-year statute of limitations under Section 2244 is subject to equitable tolling when a petitioner's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the petitioner's control. *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). The Sixth Circuit has stated that "federal courts sparingly bestow equitable tolling." *Graham-Humphreys*, 209 F.3d at 560-61; *Jurado*, 337 F.3d at 642.  When determining whether equitable tolling is appropriate, the court must consider: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap*, 250 F.3d at 1008; *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002).  These factors are not comprehensive and not all of the factors are relevant in all cases. *Cook*, 295 F.3d at 521.  Whether equitable tolling is appropriate is a case-by-case analysis. *Id*.  The petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling. *Vroman*,  346 F.3d at 605.

-8-

**B.    Exhaustion of State Remedies**

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

In *Harris v. Lafler*, this Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition

-9-

on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2). 553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

-10-

(3)     whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and

-11-

actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

**IV**.    **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 4, 2006, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.     Decisions of lower federal courts may not be considered.

B.     Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.     The state court decision may be overturned only if:

1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.     the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

-13-

      3.     'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

      4.     the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

    D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

    E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

    (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore,

-14-

a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V.     ANALYSIS

Based upon the applicable standards of review, the undersigned recommends that the Court dismiss the instant petition, with prejudice as time-barred and procedurally-barred:

### A.     Statute of Limitations

Respondent contends that the instant petition is time-barred, procedurally defaulted, and meritless. ECF Dkt. #5. The undersigned first recommends that the Court find that the instant petition is barred by the AEDPA statute of limitations. Petitioner's conviction became final on January 30, 2007 – 90 days after the Ohio Supreme Court declined jurisdiction on direct review on November 1, 2006. *See* 28 U.S.C. § 2244(d)(1)(A); Rule 13 of the Rules of the Supreme Court of the United States (a petition for writ of certiorari is timely when it is filed within 90 days of judgment from the state court); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000) ("the one-year statute of limitations does not begin to run until the time for filing a petition for a writ of certiorari for direct review in the United States Supreme Court has expired."). Therefore, Petitioner had one year following January 30, 2007 in which to file a petition pursuant to 28 U.S.C. § 2254. Since the instant petition was filed on December 8, 2008, more than a year after January 30, 2007, the petition is time-barred unless tolling applies.

The only motions that could serve to toll the AEDPA statute of limitations in the instant case are Petitioner's motion for leave to file a motion for a new trial and his supplemental motion for leave to file a motion for a new trial. ECF Dkt. #5, Exs. 10, 13. In order for those motions to toll the AEDPA statute of limitations, they must have been properly filed. 28 U.S.C. § 2244(d)(2). In this case, the motions were not properly filed because they were founded upon newly discovered evidence and Ohio Rule of Criminal Procedure 33 requires such a motion to be filed within 120 days

of the date upon which the verdict was rendered or within 7 days of an issuance of an order of the court finding that the defendant was unavoidably prevented from discovering the new evidence. Ohio R. Crim. P. 33.   In the case at bar, the jury rendered its verdict on June 3, 2005, but Petitioner did not file his first motion until March 28, 2006 – 298 days later.  *See* ECF Dkt. #5, Exs. 2, 10. Petitioner argued that newly discovered evidence existed in the form of an affidavit from Jimmy Washington, who confessed to the shooting, and that he was unavoidably prevented from discovering that evidence at the time of trial because the confession did not exist then.  ECF Dkt. #5, Ex. 10.  The Ohio Court of Appeals ultimately denied the motion because "[i]t [was] undisputed that Jimmy Washington was known to the defense before trial and thus Washington (affidavit) cannot constitute 'newly discovered evidence' that satisfied Criminal Rule 33(B)."  ECF Dkt. #5, Ex. 14 at 2.  Since Petitioner's motions were based upon evidence that was available or could have been discovered at the time of trial, he could have complied with the 120 day filing requirement.  However, he failed to do so; therefore, his motions did not comply with the procedural requirements of Rule 33 and were not properly filed for AEDPA tolling purposes.

Petitioner does not contend that equitable tolling applies to this case.  *See* ECF Dkt. #1. Further, the undersigned is not aware of any reason that the Court should bestow equitable tolling. Specifically, Petitioner has not demonstrated a lack of notice of the filing requirement; a lack of constructive knowledge of the filing requirement; diligence in pursuing his rights; or reasonableness in remaining ignorant of the legal requirement for filing his claim.  Therefore, equitable tolling should not apply.

Lastly in regard to the AEDPA statute of limitations, the Court should consider Petitioner's actual innocence claim.  The Sixth Circuit has held that the Constitution requires an actual innocence exception to AEDPA's statute of limitations.  *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005).  The burden for establishing actual innocence is as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway [the AEDPA statute of limitations] and argue the merits of his underlying claims." *Schlup*

> *v. Delo*, 513 U.S. 298, 316 (1995).  Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial."  *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Id*. at 327.  The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"  *Id*. at 321.

*Rickard v. Wolfe*, Case No. 3:06CV2753, 2007 WL 4526522 at *14-*15 (N.D. Ohio Dec. 17, 2007), unreported, quoting *Medina v. Wolfe*, No. 2:06-CV-921, 2007 WL 2323381 at *9, slip op. (S.D. Ohio August 9, 2007).

In the instant case, Petitioner contends that an affidavit from Jimmy Washington exonerates him of the crime.  However, that affidavit does not constitute newly discovered evidence to meet the actual innocence exception.  The Honorable Jamse S. Gwin of this Court has held that an affidavit based upon facts known to the petitioner at trial does not constitute newly discovered evidence for actual innocence purposes.  *Rickard*, 2007 WL 4526522 at *5.  Further, a witness' affidavit does not constitute newly discovered evidence for actual innocence exception purposes if the evidence was first presented to the state court.  *Id*.  ("This Court similarly finds that the Smith affidavit is not new evidence because the Petitioner has submitted the affidavit previously in state court. ").  Therefore, Jimmy Washington's affidavit is not newly discovered evidence for the purposes of determining if Petitioner's assertion of actual innocence should permit consideration of otherwise time-barred habeas claims contained in Grounds 1 and 2.

For the foregoing reasons, the undersigned recommends that the Court dismiss the instant petition in its entirety with prejudice.

### B.    Procedural Default

Respondent also contends that Grounds 1 and 2 of the instant Petition are procedurally defaulted because Petitioner did not raise his claims as objections in the trial court and they were consequently barred from consideration on further appeal. ECF Dkt. #5 at 16-21.  The undersigned

recommends that the Court find Grounds 1 and 2 of the instant Petition to be procedurally defaulted because Petitioner failed to object at trial based upon the instant alleged constitutional violations contained in Grounds 1 and 2.  Further, Ground 3 is a stand-alone actual innocence claim that is not cognizable,[2] but even if it were, Petitioner has failed to comply with Ohio's procedural requirements for filing a Rule 33 motion, as discussed above, and it is therefore procedurally barred as well.

The Court must apply the four-part *Maupin* test.  Under the first prong of *Maupin*, the Court must determine if Petitioner failed to comply with a state procedural rule.  In Ohio, "a proper objection must be raised at trial to preserve error."  *State v. Brown*, 528 N.E.2d 523, 533 (Ohio 1988); *See also State v. Maurer*, 473 N.E.2d 768, 787 (Ohio 1984) ("Failure to object to evidence at the trial constitutes a waiver of any challenge. . .").  Since Petitioner failed to object at trial, the first prong of *Maupin* is satisfied with regard to Grounds 1 and 2.  Since Petitioner's Rule 33 motion was untimely, the first prong of *Maupin* is also satisfied with regard to Ground 3.

Under the second prong of *Maupin*, the Court must consider whether the state court has enforced its rule.  In this case, the Ohio Court of Appeals considered Petitioner's claims under Grounds 1 and 2 only for plain error.  ECF Dkt. #5, Ex. 7.  This determination is sufficient enforcement of the procedural bar as the Sixth Circuit has held:

> Petitioner argues that the Ohio Supreme Court waived any procedural default that may have existed by conducting a plain error analysis on some of Petitioner's claims upon direct appeal, even though Petitioner had failed to preserve those claims through contemporaneous objections during trial. Petitioner appears to believe that the plain error analysis indicates that the Ohio courts do not consistently enforce their res judicata rule, and therefore this Court should not rule any of Petitioner's claims procedurally defaulted because of the state courts' inconsistency. First, the Ohio Supreme Court's plain error review did not address, in any fashion, the evidentiary claims presented in subclaims (e) through (i) in this assignment of error. Moreover, this Court has held that a state court's plain error analysis does not save a petitioner from procedural default.FN3 *See Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir.2000). **Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits.** *See id*. at 866-67.

---

[2]     *Herrera v. Collins*, 506 U.S. 390, 416-17 (1993) ("Our federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim, but as a basis upon which a habeas petitioner may have an independent constitutional claim considered on the merits, even though his habeas petition would otherwise be regarded as successive or abusive.")

-18-

*Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (internal footnote omitted) (emphasis added).  With regard to Ground 3, the Court of Appeals enforced the procedural bar by denying Petitioner's motions for leave to file a motion for a new trial.  ECF Dkt. #5, Ex. 14.  Further, the Court can presume that the Supreme Court of Ohio enforced the procedural bar when it declined jurisdiction on direct appeal and on appeal from Petitioner's Rule 33 motions.  *See Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996) quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)("[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground.").

The third prong of *Maupin* is satisfied because Ohio's waiver rule is an adequate and independent state bar for review a federal habeas claim.  *Osbourne v. Ohio*, 495 U.S. 103, 123 (1990).  With regard to Ground 3, a procedural rule imposing a firmly established and regularly followed time bar poses an adequate and independent state procedural bar to foreclose federal review.  *See e.g., Fautenberry v. Mitchell*, 515 F.3d 614, 640-41 (6th Cir. 2008).  Lacking any indication that Ohio does not regularly follow Rule 33, the Court should find that it poses an adequate and independent procedural bar.

Under the fourth prong of the *Maupin* test, the Court must determine whether Petitioner has demonstrated cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  Petitioner does not contend that cause exists for his failure to apply with Ohio's procedural rules.  Specifically, Petitioner does not contend that ineffective trial counsel caused his default, even though he raised a claim of ineffective assistance of counsel on direct appeal.

Lastly, the Court must consider whether adjudication of the merits is necessary to avoid a manifest injustice.  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  In order for Petitioner to establish a manifest injustice to permit consideration of otherwise procedurally-barred claims, he must demonstrate actual innocence based upon newly discovered evidence.  *See Schlup*, 513 U.S.

-19-

at 327-332. To the extent that Petitioner contends that Jimmy Washington's affidavit establishes his innocence, his claim lacks merit because as previously discussed in Section V(A), the affidavit does not constitute newly discovered evidence.  Petitioner has already presented the evidence in the state courts.  Further, the Defense was aware that Jimmy Washington was a potential suspect and could have investigated him.  The possibility of Jimmy Washington as an alternate suspect was presented to the jury at trial.  Therefore, his affidavit should not be considered newly discovered evidence.

For the foregoing reasons, the undersigned recommends that the Court dismiss the instant petition in its entirety with prejudice.

### C.    Merits

Based on the foregoing analysis and recommendations, the undersigned finds that it is unnecessary to address the merits of the instant petition.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


Date:  September 24, 2009                              */s/George J. Limbert*
                                                       GEORGE J. LIMBERT
                                                       UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-20-